**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

**July 24, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

_____

IAN COOPERSTEIN,

　　Plaintiff - Appellant,

v.

SALT LAKE CITY CORPORATION;
SALT LAKE CITY POLICE
DEPARTMENT; POLICE CHIEF
MIKE BROWN; OFFICER
ANDERSON; OFFICER WEST,

　　Defendants - Appellees.

No. 24-4075
(D.C. No. 2:23-CV-00468-DBP)
(D. Utah)

_____

**ORDER AND JUDGMENT\***
_____

Before **McHUGH**, **EID**, and **ROSSMAN**, Circuit Judges.
_____

Salt Lake City Police Officers Jake Anderson and Logan West (the

Officers) entered Plaintiff-Appellant Ian Cooperstein's garage to help his

former tenant retrieve her property. Mr. Cooperstein believed the Officers

entered his garage unlawfully, so he sued them, the Salt Lake City

Corporation, the Salt Lake City Police Department, and Police Chief Mike

---

　　\* This order and judgment is not binding precedent, except under the
doctrines of law of the case, _res judicata_, and collateral estoppel. It may be
cited, however, for its persuasive value consistent with FED. R. APP. P. 32.1
and 10th Cir. R. 32.1.

Brown (collectively, Defendants) under 42 U.S.C. § 1983 for violating his Fourth Amendment rights. Defendants moved to dismiss, asserting the defense of qualified immunity. The district court granted the motion, concluding Mr. Cooperstein failed to allege a plausible Fourth Amendment violation because body-camera footage showed he consented to the officers' entry into his garage.[1] Mr. Cooperstein now appeals. But we cannot proceed to the merits of his appeal because he has failed in his responsibility to provide a sufficient record for appellate review. Under these circumstances, and exercising jurisdiction under 28 U.S.C. § 1291, we must summarily affirm.

---

[1] The parties consented to have their case heard and decided by a magistrate judge with direct appeal to this court, under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Throughout this order, we refer to the magistrate judge as "the district court." *See Mitchell* v. *Roberts*, 43 F.4th 1074, 1078 n.1 (10th Cir. 2022) (doing the same).

**I**[2]

**A**

In September 2021, Mr. Cooperstein rented the upstairs portion of his house to Heidi Williams and her children. After falling "thousands of dollars" behind on rent, Ms. Williams was evicted on July 14, 2022. R.12 (¶ 25).

On August 15, 2022, Ms. Williams contacted the police, claiming Mr. Cooperstein was holding her belongings in his garage. The Officers, wearing body cameras, met with Ms. Williams in front of Mr. Cooperstein's house.[3] The complaint alleged the Officers then "forced their way into Mr. Cooperstein's

---

[2] We recite the facts as alleged in the complaint. "At the motion-to-dismiss stage, we must accept as true all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Martinez* v. *City of Aurora*, 174 F.4th 745, 750 n.1 (10th Cir. 2026) (brackets and internal quotation marks omitted). Eight exhibits were attached to and referenced in Mr. Cooperstein's complaint. There is no dispute the district court properly considered these exhibits in resolving Defendants' motion to dismiss or that we may likewise consider them on appeal. *See Gee* v. *Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (recognizing "documents that the complaint incorporates by reference" or that are "attached as exhibits to the complaint" are an "exception[]" to the general rule that "the sufficiency of a complaint must rest on its contents alone").

[3] It is undisputed both Officers were wearing body cameras. Exhibits attached to Mr. Cooperstein's complaint show, after the incident, he requested body-camera footage from both Officers but was falsely told by the Salt Lake City Police Department that the "the only video" taken during the incident came from Officer Anderson's camera. R.72. According to Mr. Cooperstein, the existence of Officer West's video was revealed when Defendants attached to their motion to dismiss the videos from both Officers.

home" and removed several objects worth nearly $6,000. R.13 (¶ 27). Mr. Cooperstein further alleged items taken by the Officers "belonged to him." R.13 (¶ 26).

**B**

Mr. Cooperstein filed a civil-rights lawsuit against Defendants. Relevant here, he sued the Officers in their individual capacities under 42 U.S.C. § 1983, alleging a violation of his Fourth Amendment right to be free from unreasonable seizures of property.[4] According to the complaint, the Officers violated Mr. Cooperstein's Fourth Amendment rights by "entering [his] home

---

[4] Mr. Cooperstein also sued Officer Anderson for failure to intervene in violation of the Fourth Amendment; Salt Lake City Corporation, the Police Department, and Police Chief Mike Brown for municipal liability under *Monell* v. *Department of Social Services*, 436 U.S. 658 (1978); the Officers for unreasonable seizure under the Utah Constitution; the Officers for breach of their fiduciary duty; and the Officers for intentional infliction of emotional distress (IIED). The district court ultimately dismissed all claims against all Defendants with prejudice. In particular, the court dismissed the Fourth Amendment, municipal liability, and Utah unreasonable-seizure claims because, as we will explain, Mr. Cooperstein had failed to show a constitutional violation. The district court dismissed the fiduciary duty and IIED claims as barred by governmental immunity. On appeal, Mr. Cooperstein does not challenge the district court's dismissal of the fiduciary duty or IIED claims. Nor does he challenge the district court's dismissal of the *Monell* claims against the Salt Lake City Police Department and Police Chief Brown. This appeal, then, centers on the Fourth Amendment claims against the Officers, the municipal-liability claim against the Salt Lake City Corporation, and the Utah unreasonable-seizure claims against the Officers. As we will explain, we cannot resolve the appellate arguments about any of these claims due to Mr. Cooperstein's failure to create an appellate record adequate for our review.

without probable cause and/or a warrant and unreasonably seizing Mr. Cooperstein's property and giving it to Ms. Williams." R.19–20 (¶ 47). For support, the complaint and several of its eight attached exhibits referenced body-camera footage taken at the scene by Officer Anderson.

Defendants moved to dismiss all claims under Federal Rule of Civil Procedure 12(b)(6).[5] Relevant here, the Officers asserted qualified immunity, arguing Mr. Cooperstein could not satisfy the familiar two-step framework for challenging their entitlement to that defense. *See Ashcroft* v. *al-Kidd*, 563 U.S. 731, 735 (2011) (explaining qualified immunity shields public officials "from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct" (internal quotation marks omitted)). The Officers focused their argument on the first prong, contending Mr. Cooperstein failed to allege facts sufficient to show a constitutional violation. In support of their motion to dismiss, Defendants attached three exhibits:

- Exhibit 1: a police report of the incident;
- Exhibit 2: body-camera footage taken during the incident by Officer Anderson; and

---

[5] As we will explain, Mr. Cooperstein included neither the motion-to-dismiss briefing nor the body-camera videos in the appellate record. We rely on the district court's summary and the parties' undisputed characterizations to inform our own discussion of that briefing and the videos.

- Exhibit 3: body-camera footage taken during the incident by Officer West.

According to the Officers, these exhibits show Mr. Cooperstein admitted Ms. Williams' belongings were in his garage, verbally consented to the removal of those belongings, and voluntarily opened his garage door for the Officers and Ms. Williams to enter the garage. Under these circumstances, the Officers argued, Mr. Cooperstein could not meet his burden to show a constitutional violation, since a consensual police encounter does not violate the Fourth Amendment.

The district court agreed. "After considering the parties' briefs, the video recordings of the incident, and hearing argument," the court granted Defendants' motion to dismiss in a written order. R.74. At the outset, the court said it could consider the exhibits attached to Defendants' motion to dismiss without converting it into a motion for summary judgment. The court reasoned the three exhibits fit within recognized exceptions to the general rule that a court must resolve a motion to dismiss based only on the sufficiency of the allegations in the complaint itself. *See* R.75 nn.3–4 (citing *Smith* v. *United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). As to Exhibit 1 (the police report), the court said the report "was expressly referenced in and thus incorporated into the Complaint." R.75 n.3 (citing *Smith*, 561 F.3d at 1098 ("In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider . . . documents

6

incorporated into the complaint by reference[.]”)). As to Exhibits 2 and 3 (the body-camera footage from the incident), the court similarly found them “expressly referenced in and incorporated into the Complaint” and “central to Mr. Cooperstein’s claim.” R.75 n.4 (citing *Smith*, 561 F.3d at 1098 (“[T]he district court may consider documents referred to in the complaint if the documents are central to the plaintiff’s claim and the parties do not dispute the documents’ authenticity.” (internal quotation marks omitted))). The court noted, “Mr. Cooperstein does not dispute that the Exhibits . . . [a]re properly before the Court.” R.75 n.4.

The district court then described the footage in detail. According to the court, the videos showed an initial interaction outside Mr. Cooperstein’s house between Ms. Williams and the Officers in which “Ms. Williams appeared calm and rational.” R.76. Mr. Cooperstein then came outside. Officer West asked him, “Does [Ms. Williams] have stuff here?” R.77. Mr. Cooperstein responded, “She does have stuff.” R.77. After a brief exchange, Officer West told Mr. Cooperstein that Ms. Williams had returned to his house “to get her stuff . . . off your property.” R.77. According to the district court, “Mr. Cooperstein then shrugged his shoulders and said, ‘Fine,’” walked back into his house, and less than a minute later “remotely opened the garage door from inside the house.” R.77–78. The court said the Officers then entered the garage to “help[] Ms. Williams remove the items to the street curb.” R.78.

7

Based on the footage, the court concluded "Mr. Cooperstein voluntarily consented to the removal of the items" from his garage.[6] R.87. "[T]herefore," the court held, he "fail[ed] to carry his burden to show a constitutional violation," R.87, since a consensual encounter with police does not violate the Fourth Amendment, R.83–84 (citing *United States* v. *Mercado-Gracia*, 989 F.3d 829, 836 (10th Cir. 2021) (recognizing "consensual encounters" between police and citizens "do not implicate the Fourth Amendment" (internal quotation marks omitted))). Because Mr. Cooperstein could not show a constitutional violation, the Officers were entitled to qualified immunity. The court dismissed the Fourth Amendment claim with prejudice. This timely appeal followed.

## II

Mr. Cooperstein seeks reversal of the district court's order dismissing with prejudice his Fourth Amendment claim against the Officers. "We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo." *Khalik* v. *United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). We also "review the district court's decision to grant a motion to dismiss based on qualified immunity de novo." *Johnson* v. *City of Cheyenne*, 99 F.4th 1206, 1216 (10th Cir. 2024). According to Mr. Cooperstein, the district court erred, *first*,

---

[6] The court also observed that two of Mr. Cooperstein's allegations in his complaint were "contradicted" by the videos. R.77 nn.10, 12.

by considering the body-camera footage when the complaint did "not refer[]" to "Officer West's body cam footage" and both videos were "not central to his . . . claim[,]" Op. Br. at 12, 20; *second*, by invoking the "blatantly contradicted" standard in *Scott* v. *Harris*, 550 U.S. 372, 380 (2007) at the motion-to-dismiss stage and relying on it when no contradiction exists between the body-camera footage and his complaint; and *third*, by mistakenly "placing itself as the fact finder over contested factual claims."[7] Op. Br. at 30 (heading formatting omitted).

The Officers urge affirmance, insisting Mr. Cooperstein has violated our procedural rules by "fail[ing] to provide an adequate record" for appellate review. Resp. Br. at 12 (heading formatting omitted). The Officers point out Mr. Cooperstein included in the appellate record neither the "briefing for the motion that is the subject of this appeal" nor "the bodycam videos that were central to the district court's [d]ecision." Resp. Br. at 13–14. Without these sources, the Officers say, this panel will be unable to resolve Mr. Cooperstein's appeal. Under the circumstances of this case, we must agree. The district court

---

[7] Mr. Cooperstein suggests the district court impermissibly resolved five disputed factual issues at the motion to dismiss stage: whether the officers refused to speak with him; his subjective reason for returning to his house; what information Officer Anderson knew regarding Ms. Williams' criminal history; whether the Officers intended to coerce Mr. Cooperstein; and whether the Officers knowingly went beyond the scope of Mr. Cooperstein's consent. But as we will discuss, we cannot assess any of these purported disputes without the videos.

relied on the body-camera footage, motion-to-dismiss briefing, and attached exhibits to resolve the motion to dismiss. Those materials are not part of the appellate record, but we need them to decide this appeal under the *de novo* standard of review. Accordingly, Mr. Cooperstein's failure to compile a sufficient record for our appellate review requires us to affirm without reaching the merits of his legal challenges.

## A

Where, as here, "*de novo* review is compelled, no form of appellate deference is acceptable." *Salve Regina Coll.* v. *Russell*, 499 U.S. 225, 238 (1991); *Daigle* v. *Shell Oil Co.*, 972 F.2d 1527, 1539–40 (10th Cir. 1992) (similar). "De novo review means we make an independent determination of the issues." *Heggy* v. *Heggy*, 944 F.2d 1537, 1539 (10th Cir. 1991). We are obligated to "scrutinize the complaint from the *same* perspective as the district court." *Pelt* v. *Utah*, 104 F.3d 1534, 1540 (10th Cir. 1996) (emphasis added). Thus, to "conduct our de novo review, we must necessarily review the materials before the district court." *Burnett* v. *Sw. Bell Tel., L.P.*, 555 F.3d 906, 907 (10th Cir. 2009) (internal quotation marks omitted).

Our local rules clearly state it is the "[a]ppellant's duty," when "represented by retained counsel," to "electronically file an appendix sufficient for considering and deciding the issues on appeal." 10th Cir. R. 30.1(B)(1). Particularly relevant here, where the appeal concerns a motion to dismiss, the

10

rules require the appellant to include "the motion, relevant portions of affidavits, depositions and other supporting documents (including any supporting briefs, memoranda, and points of authority), filed in connection with that motion or pleading, and any responses and replies[.]" 10th Cir. R. 10.4(D)(2).

We consistently enforce an appellant's duty to compile a sufficient appellate record. "As we have warned parties many times, we regularly decline to hear claims predicated upon record evidence not included in the appendix." *Burnett*, 555 F.3d at 910. "This Circuit's rules are not empty gestures, and an appellant who fails to comply, does so at its own risk[.]" *MVT Servs., LLC* v. *Great W. Cas. Co.*, 118 F.4th 1274, 1283–84 (10th Cir. 2024) (internal citation and quotation marks omitted); *e.g.*, *id.* at 1283 (declining to consider an issue on appeal because "we lack an adequate record to consider th[e] issue" as a result of appellant's "failure" to provide a complete appendix); *Tilton* v. *Cap. Cities/ABC, Inc.*, 115 F.3d 1471, 1474 (10th Cir. 1997) ("Because the appellant's appendix is insufficient to permit assessment of this claim of error, we must affirm."); *Scott* v. *Hern*, 216 F.3d 897, 912 (10th Cir. 2000) ("Where the record is insufficient to permit review we must affirm.").

We conclude Mr. Cooperstein—represented here by retained counsel— did not provide us with an adequate appellate record. He failed to include in the appendix any of the underlying motion-to-dismiss briefs or the exhibits

11

attached thereto, including the body-camera footage that formed the basis for the district court's decision to dismiss the complaint. Op. Br. at 27 (observing "the magistrate [judge] cited the videos twenty-three times"). This plainly violates our local rules. *See* 10th Cir. R. 10.4(A) ("Counsel must designate a record on appeal or prepare an appendix that is sufficient for considering and deciding the appellate issues."); 10th Cir. R. 10.4(D)(2) (requiring, in an appeal "from an order disposing of a motion or other pleading, the motion, . . . other supporting documents . . . and any responses and replies . . . must be included in the record or appendix"); 10th Cir. R. 30.1(B)(1) (making clear the "requirements of Rule 10.4" are an "[a]ppellant's duty" (heading formatting omitted)).[8]

---

[8] Mr. Cooperstein claims "Tenth Circuit Rule 30.1(B)(1)" only requires motion briefing to be included "in the record *or* in the appendix" and that he "designated the record" as prescribed by Rule 10.3(A)(1). Reply Br. at 1–2. This argument lacks merit. Mr. Cooperstein's contention relies on Rule 10.4(D)(2)— not Rule 30.1(B)(1) as he suggests. But in any event, whether Mr. Cooperstein designated the record under Rule 10.3(A)(1) is immaterial because that rule applies only to "appeals in which any appellant is represented by *appointed counsel*." 10th Cir. R. 10.3(A) (emphasis added). "In appeals in which all appellants are represented by retained counsel . . . no designation [of the record] is required and the record *will be presented in an appendix prepared by the appellant*." 10th Cir. R. 10.3(B) (emphasis added). And here Mr. Cooperstein is "represented by retained counsel" so an appendix, not a designation of the record, is required. 10th Cir. R. 30.1(B); *see* 10th Cir. R. 30.1 ("The appendix required by the remainder of this Rule 30.1 is the form the record on appeal takes when the appellant is represented by retained counsel[.]"); *see also Milligan-Hitt* v. *Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1231 (10th Cir. 2008) (clarifying "the relationship between the appendix and the record").

These violations are significant. As we will now explain, without the motion-to-dismiss briefing and body-camera footage, we cannot fulfill our appellate duty to review *de novo* the district court's order denying the motion to dismiss and adjudicate Mr. Cooperstein's assertions of error.

## B

Recall, Mr. Cooperstein advances three arguments challenging the district court's decision. On this inadequate record, we cannot review any of them. *See Burnett*, 555 F.3d at 909 ("Absent provision of [the exhibits] . . . we are unable to verify their contents" so "appropriate review of the district court's order[] is not possible[.]"). We address each argument in turn.

*First*, Mr. Cooperstein claims the court erred in considering the Officers' body-camera videos, which were attached to the motion to dismiss. "Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion[.]" *Clinton* v. *Sec. Benefit Life Ins. Co.*, 63 F.4th 1264, 1275 (10th Cir. 2023) (internal quotation marks omitted). But we "may [also] consider documents *referred to in the complaint* if the documents are central to the plaintiff's claim[.]" *Brown* v. *Montoya*, 662 F.3d 1152, 1166 (10th Cir. 2011) (internal quotation marks omitted). Mr. Cooperstein argues the videos fail both requirements: The complaint does not refer to "Officer West's body cam footage . . . at all," he says, and the videos from both Officers' body cameras are "not central to his Fourth Amendment claim." Op. Br. at 12, 20.

13

But we cannot evaluate his arguments on this record. The district court noted "Mr. Cooperstein does not dispute that the [e]xhibits to Defendants' [m]otion were properly before the [c]ourt." R.75 n.4. Though we doubt any of Mr. Cooperstein's arguments on this issue are properly preserved, without the briefs, we cannot be sure. As we have said, Mr. Cooperstein's appellate appendix lacks Defendants' motion to dismiss, his own response, and Defendants' reply. Without these motions, "we are impeded in determining what arguments [the plaintiff] properly preserved for appellate review." *Burnett*, 555 F.3d at 908; *cf.* 10th Cir. R. 28.1(A) ("[A]ll briefs must cite the precise references in the record where the issue was raised and ruled on[.]").

Resisting this conclusion, Mr. Cooperstein claims in his reply brief that he preserved his appellate argument challenging the district court's reliance on the body-camera videos. The reason, he says, is that his opposition to the motion to dismiss "correctly cited the critical legal standard associated with reviewing a motion to dismiss." Reply Br. at 5 (citing Opp. to Mot. to Dismiss, No. 2:23-cv-00468-DBP, Dkt. No. 13 at 6). But again, without his district court brief, we have no way to assess the validity of his argument or confirm the accuracy of the district court's observation. *See Burnett*, 555 F.3d at 908 ("[T]he appellant should make sure that the record on appeal includes the material necessary to demonstrate that the contentions it raises on appeal were also raised below." (quoting 16A Charles Alan Wright, Arthur R. Miller, Edward H.

14

Cooper & Catherine T. Struve, *Federal Practice and Procedure* § 3956.1, at 641 (4th ed. 2008) (internal quotation marks omitted)).

*Second*, Mr. Cooperstein claims the district court erred by "employ[ing] a summary judgment standard to resolve the motion to dismiss." Op. Br. at 25 (heading formatting omitted). In particular, Mr. Cooperstein says, the district court wrongly believed that, at the motion-to-dismiss stage, it could decline to adopt the "version of the facts" presented by Mr. Cooperstein's complaint if those allegations are "blatantly contradicted" by the body-camera footage. Op. Br. at 26 (quoting R.79–80 (quoting *Scott*, 550 U.S. at 380)). Further, Mr. Cooperstein challenges the district court's determination there was in fact any such contradiction. But, lacking the body-camera videos, we cannot fulfill our obligation to review these claims *de novo*.

Even assuming the court erroneously invoked the blatant-contradiction exception at the motion-to-dismiss stage,[9] that error "is harmless" and does not require reversal "if the dismissal can be justified under Fed.R.Civ.P. 12(b)(6) standards *without consideration of the matters outside the pleadings*." *Lowe* v. *Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) (emphasis added). For

---

[9] We recently held a district court at the motion-to-dismiss stage could not consider whether video evidence "blatantly contradicts" the complaint where that video evidence was not subject to one of the three exceptions for considering evidence outside the complaint. *See Fuqua* v. *Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1300–01 (10th Cir. 2025).

the reasons already explained, the inadequate nature of the appellate appendix means we cannot independently evaluate what "the pleadings" are in the first place, let alone determine whether those pleadings would justify dismissal.[10] *See GFF Corp.* v. *Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997) (explaining an "indisputably authentic" letter that was "central to" plaintiff's claim may "properly" be considered by the district court at the motion-to-dismiss stage "as not 'outside the pleading' for purposes of the 12(b)(6) motion"); *see* R.75 n.4 (holding the videos can be considered at the motion-to-dismiss stage because they are "expressly referenced in and incorporated into the Complaint and are central to Mr. Cooperstein's claim"). Nor could we evaluate whether the footage blatantly contradicts the complaint without first seeing that footage.[11]

---

[10] For example, if we determined the district court erred in considering Officer West's video, but not Officer Anderson's video, we could not independently assess whether such an error affects the ultimate disposition without viewing the videos, given that the footage from both might be similar or nearly identical. *See Lowe*, 143 F.3d at 1381. Likewise, if we found Officer Anderson's video "central" to Mr. Cooperstein's claim, we would have no way to conduct our *de novo* review of the complaint and decide whether Mr. Cooperstein sufficiently stated a plausible Fourth Amendment claim to survive the motion to dismiss. *See Travelers Indem. Co.* v. *Accurate Autobody, Inc.*, 340 F.3d 1118, 1120 (10th Cir. 2003) ("We are unwilling to reverse the decision of the district court based on a guess[.]").

[11] At oral argument, Mr. Cooperstein suggested we could reach this issue "if [we] accept the court's view of what the video provides, which is not contested by the City or by Mr. Cooperstein." Oral Arg. at 8:29–:40. Our standard of review prohibits the approach Mr. Cooperstein suggests. As

*Third*, Mr. Cooperstein contends the district court "took the place of the jury and resolved the facts in the City's favor[.]" Op. Br. at 32. Specifically, he identifies five "disputed question[s]" that he claims the court improperly resolved. Op. Br. at 32; *see* Op. Br. at 32–35. But, again, without the videos we cannot reach our own "independent determination of the issues," *Heggy*, 944 F.2d at 1539, including analysis of the videos in the context of the facts alleged in the complaint and the asserted Fourth Amendment violation. Mr. Cooperstein's failure to include the videos forecloses our ability to properly perform *de novo* review. Where, as here, "we are forced to venture a guess as to the merits of an argument or claim, even an informed guess, we will summarily affirm the district court's judgment." *Lincoln* v. *BNSF Ry. Co.*, 900 F.3d 1166, 1190 (10th Cir. 2018) (internal quotation marks omitted).[12]

---

already discussed, "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable." *Salve Regina Coll.* v. *Russell*, 499 U.S. 225, 238 (1991). "[W]e must necessarily review the materials before the district court." *Burnett* v. *Sw. Bell Tel., L.P.*, 555 F.3d 906, 907 (10th Cir. 2009) (internal quotation marks omitted); *see also McNellis* v. *Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1128 n.3 (10th Cir. 2024) (explaining, when an exception applies allowing a court to review a document outside the complaint at the motion-to-dismiss stage, "[w]e examine the document itself, rather than the complaint's description of it" (internal quotation marks omitted)).

[12] Mr. Cooperstein insists the district court's determination there was no Fourth Amendment violation is erroneous and requires us to reverse the dismissal of the failure-to-intervene claim against Officer Anderson, the *Monell* claim, and the claim under the Utah constitution—all of which were dismissed on the basis that no Fourth Amendment violation occurred. Given our disposition, we have no cause to reach this issue.

### III

Mr. Cooperstein's failure to include the underlying motion-to-dismiss briefing and the body-camera videos—materials required to adjudicate the instant appeal—deprives this court of its ability to conduct *de novo* review of Mr. Cooperstein's challenges to the rulings of the district court. We therefore summarily **AFFIRM** the court's grant of summary judgment.

Entered for the Court


Veronica S. Rossman
Circuit Judge